PLANET EARTH ENTERTAINMENT, INC., d.b.a. Diamonds, Appellee,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellant.

[Cite as *Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm.* (1998), 125 Ohio App.3d 619.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE06–744.

Decided Feb. 5, 1998.

*Carlile, Patchen & Murphy* and *Laurence E. Sturtz;* *Sirkin, Pinales, Mezibov & Schwartz, H. Louis Sirkin* and *Anita P. Berding;* *Chris O. Paparodis,* for appellee Planet Earth Entertainment, Inc.

*Betty D. Montgomery,* Attorney General, and *David A. Raber,* Assistant Attorney General, for appellant Ohio Liquor Control Commission.

---

DESHLER, Judge.

Appellant Ohio Liquor Control Commission ("commission") appeals from a decision of the Franklin County Court of Common Pleas in favor of appellee Planet Earth Entertainment, Inc., d.b.a. Diamonds ("Planet"), reversing three permit revocation orders issued by the commission.

Appellee Planet operates a night club known as Diamonds, which features female dancers. Planet is licensed by the commission to sell alcoholic beverages on the Diamonds premises.

Underlying this appeal are three commission orders, each revoking Planet's liquor permit. In case No. 142–96, Planet was charged with violating Ohio Adm.Code 4301:1–1–52 ("Regulation 52"), by allowing a female dancer to perform with completely bare breasts. The incident was alleged to have occurred on October 14, 1995. In case No. 785–96, occurring on December 21, 1995, Planet was charged with allowing two female dancers to remove their halter tops and expose their breasts, which were covered only with transparent latex "pasties" on the nipple area. In case No. 1116–95, Planet was charged with hindering and/or obstructing the inspection of the premises on March 30, 1996, in violation of R.C. 4301.66. Pursuant to a hearing held on April 24, 1996, the commission issued three separate orders addressing the above three violations, each order revoking Planet's liquor permit.

Planet appealed the commission's orders to the Franklin County Court of Common Pleas, which reversed. The court of common pleas found that "the proceedings held [before the commission] were a deck stacked against [Planet]," and that "the tenor of the hearing was blatantly unfair * * *." The court of common pleas accordingly found that the commission's decision was not supported by reliable, probative, and substantial evidence, or in accordance with law. The court of common pleas therefore entered judgment on May 12, 1997, reversing the decision of the commission and ordering the charges against Planet dismissed.

The commission has timely appealed and brings the following three assignments of error:

"1. The common pleas court abused its discretion when the court substituted its judgment for that of the agency.

"2. The common pleas court abused its discretion when it determined that there was not reliable, probative, and substantial evidence to support the Liquor

Control Commission's finding that Planet Earth Entertainment, Inc. violated Regulation 4301:1–1–52, Ohio Admin. Code.

"3. The common pleas court abused its discretion when it determined that there was not reliable, probative, and substantial evidence to support the Liquor Control Commission's finding that Planet Earth Entertainment, Inc. violated R.C. 4301.66."

■ The present appeal has been filed pursuant to R.C. 119.12, under which the court of common pleas is required to review the administrative agency's order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. Upon appeal from the court of common pleas, this court's review is more limited; we are required to determine, with respect to most issues, whether the court of common pleas abused its discretion in deciding whether the order of the commission was supported by reliable, probative, and substantial evidence. *Leo G. Keffalas, Inc. v. Ohio Liquor Control Comm.* (1991), 74 Ohio App.3d 650, 652, 600 N.E.2d 275, 276–277.

The present appeal, however, raises two distinct types of issues which necessitate different standards of review: (1) whether there was sufficient reliable, probative, and substantial evidence before the commission to establish a violation of regulations governing liquor permit holders, and (2) whether the nature of the proceeding before the Liquor Control Commission afforded Planet a fair hearing in compliance with due process rights guaranteed by the Ohio and United States Constitutions.

Appellant's first assignment of error challenges the court of common pleas' finding that the hearing before the commission was conducted in such a manner as to violate Planet's right to due process in the proceeding culminating in revocation of its liquor permit.

■ The issue of the constitutionality and procedural due process relating to the hearing is a question of law and thus falls under a less deferential standard of review than the abuse of discretion standard set forth above as applicable to issues of evidentiary sufficiency. On questions of law, the court of appeals' review is plenary. *WFO DBA Bristols v. Ohio Liquor Control Comm.* (Oct. 31, 1996), Franklin App. No. 96APE05–558, unreported, 1996 WL 631206, jurisdictional motion overruled (1997), 78 Ohio St.3d 1425, 676 N.E.2d 531, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

■ We note that, although appellee presents some argument with respect to the constitutionality of Regulation 52 itself, it is well settled in this appellate district that Regulation 52 can be reasonably interpreted to prohibit the type of nude or semi-nude dancing that constituted two of the three violations in the

present case. *WFO, supra.* Although authority to the contrary has recently issued from the Eighth Appellate District, see *Cleveland's PM on the Boardwalk, Ltd. v. Ohio Liquor Control Comm.* (Jan. 23, 1997), Cuyahoga App. No. 69779, unreported, 1997 WL 25522, we remain both persuaded and bound by our prior holding on this issue pending a resolution of the conflict upon certification to the Ohio Supreme Court.

The sole due process issue before us, then, is that raised in appellant's first assignment of error: whether the court of common pleas correctly found that the proceedings at the hearing before the commission that resulted in revocation of Planet's license constituted a violation of Planet's due process right to a fair hearing.

Appellant argues that the hearing strictly complied with applicable regulations governing procedures at hearings before the commission. Ohio Adm.Code 4301:1–1–65 ("Regulation 65") sets forth the procedures governing all hearings before the commission. It states in part:

"(C) In all hearings before the commission, the procedure shall be as follows:

"(1) The director of the department, first, must produce his evidence and the permit holder or appellant, as the case may be, must then produce his evidence.

"(2) The director may offer evidence in rebuttal.

"(3) The commission may, in its discretion, hear arguments.

"(D) In all hearings before the commission, and the determination thereon, the production of evidence shall be governed in general by the rules of evidence and burden of proof required by Ohio courts in civil cases. The director, the appellant or the permit holder may be represented by counsel at such hearing and such hearing shall be conducted with respect to the administration of oaths, the taking of depositions, issuing subpoenas, and the compulsory attendance of witnesses and the production of books, accounts, papers, records, documents and testimony all in accordance with section 4301.04 of the Revised Code.

" * * *

"(E) In all hearings before the commission, the burden of proof in all cases shall rest upon the director of the department."

It appears that the conduct of the hearing before the commission did, in fact, conform to the mandates of Regulation 65 with respect to the presentation of the principal evidence, that is, the stipulated reports of the commission's investigators and the rebuttal evidence presented by the manager of the night club. The Ohio Supreme Court, however, has clearly stated that the right to due process in an administrative proceeding is not limited to a simple right to have the hearing conform with the letter of applicable procedural regulations:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. * * * Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the inexorable safeguard * * * of a fair and open hearing be maintained in its integrity. * * * The right to such a hearing is one * * * assured to every litigant by the Fourteenth Amendment as a minimal requirement." *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 103, 561 N.E.2d 920, 922, quoting *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio* (1937), 301 U.S. 292, 304–305, 57 S.Ct. 724, 730–731, 81 L.Ed. 1093, 1101–1102.

The thrust of such a right to due process in an administrative proceeding is that "statutory procedural provisions aside, a requirement to conduct a 'hearing' implies a 'fair hearing.'" *Id.*, 54 Ohio St.3d at 104, 561 N.E.2d at 922.

The principal violation of due process, as argued by appellee and as perceived by the court of common pleas, was the testimony at the hearing of State Representative Robert Corbin, a representative from the district in which Diamonds nightclub is located. The record does not indicate that Representative Corbin had any personal knowledge germane to any of the alleged liquor violations that were the specific subject of the hearing; he was nonetheless permitted to comment before the commission regarding his personal opinion, and presumedly that expressed to him by his constituents, that Diamonds nightclub should not be permitted to remain in operation. There is no indication in the record or contention that Representative Corbin's comments were considered on the issue of whether Planet had indeed violated any liquor laws.

The following are the pertinent remarks taken from the record, regarding Representative Corbin's appearance before the commission:

"Representative Robert L. Corbin. I'm the state representative from this area and I'm here today because I'm pleased you are finally hearing this case because the citizens of, from Montgomery County and Washington Township have been frustrated this place has been allowed to operate in what we consider to be an illegal manner in comparison to the liquor laws.

"There have been other violations and other complaints as far as their dealings with the landlords, misrepresentation of what they were going to do and stuff like that. I understand there have been court cases found and the frustration of the citizens of Montgomery County and Washington Township and Sheriff's office and township trustees they feel this place should be closed[.]"

Counsel for Planet objected to Representative Corbin's testimony and asked that it be stricken from the record as inappropriate, inadmissible hearsay, and irrelevant to the violations currently before the commission.

Our review of the transcript of the hearing, including Representative Corbin's remarks, testimony of other witnesses, the stipulated reports of the investigators, and other circumstances surrounding the ultimate revocation of Planet's liquor permit, leads us to conclude that the court of common pleas erred in finding that Planet had been denied the "inexorable safeguard * * * of a fair and open hearing * * *." *Ormet, supra.* As will be further discussed below in connection with appellant's second assignment of error, there was considerable evidence before the commission upon which it could base its determination that violations had in fact occurred and revocation of the permit was appropriate. There is simply no evidence in the record from which we can conclude that the commission was improperly swayed either by the presence of State Representative Corbin or the content of his remarks. While appellee argues that the severity of the sanction imposed, that is, permit revocation, is itself an indicator that the commission was unduly influenced and prejudiced by Representative Corbin's presence, it is not unusual for the commission to be particularly concerned in cases in which there has been a lack of cooperation with liquor agents, since voluntary cooperation by permit holders is paramount to the liquor permit enforcement process. Furthermore, it is well established that a lawful penalty imposed by the liquor commission, as opposed to any finding by the commission of infractions, may not be modified upon appeal. *Henry's Cafe, Inc. v. Ohio Bd. of Liquor Control* (1959), 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d 678. In the balance of the clear and substantial evidence presented at the hearing concerning the actual violations themselves, and the brief and rather dispassionate remarks presented by Representative Corbin, we find that appellee was not denied a fair and open hearing comporting with constitutional guarantees of due process, and the trial court erred in finding such a denial of due process. Appellant's first assignment of error accordingly has merit and is sustained. While we do not necessarily agree with the severity of the commission's sanctions in this case, we are not at liberty to change its decision in this respect.

Appellant's second and third assignments of error raise issues more typically considered in an appeal from a liquor commission proceedings, that is, whether there was sufficient reliable, probative, and substantial evidence before the commission to support a revocation or other penalty based upon the existence of a violation of liquor regulations.

A review of the record before us indicates that the finding of liquor regulation violations was primarily supported by the investigatory reports, which were stipulated to by appellee. In particular, with relation to the charge that appellee

failed to cooperate with investigating agents, the stipulated reports detail how appellee's personnel, including individuals who identified themselves as president and vice president of the corporation, failed to cooperate with the investigating agents despite repeated requests that they do so. Appellee did not dispute any of the facts contained in the reports but offered a different interpretation of the events. The reports are contained in the record and read in relevant part as follows:

"At approximately 10:45 P.M., Agent Naginey entered the premises and properly identified herself to an unknown doorman who attempted to prevent Agent Naginey from entering by saying that Agent Naginey had to 'wait by the door' until he contacted his supervisor. Agent Naginey entered anyway and conferred with Agent Clapp. (It should be noted that the majority of the employees at Diamonds are equipped with portable radios to communicate with other employees.)

"Both Agent Naginey and Clapp properly identified themselves to Lucas Liakus * * * who stated he was the 'President' of the corporation and Scott Conrad * * * who identified himself as 'Vice–President' [sic ]," and advised them of the violation. Immediately both Liakus and Conrad became uncooperative. Agent Clapp requested L. Liakus to obtain the liquor permit and ordered him to have the dancers stop dancing topless. L. Liakus stated that he would and was then requested by Agent Clapp to have the dancers report to the office to obtain their information. After approximately 15 minutes, no dancers had reported to the office, and L. Liakus and S. Conrad continued to be uncooperative with both Agents. Agent Clapp asked again where the dancers were, and when Agent Naginey went to the bar/dancing area of the premises, she observed the Go–Go dancers still dancing topless, exposing their bare breasts.

"Agent Naginey advised Agent Clapp of the dancers and Agent Clapp advised L. Liakus that due to his refusing to cooperate, that the premises would be temporarily closed while the investigation was underway. Agent Naginey proceeded to the bar area and advised S. Conrad that he needed to tell the D.J. to inform the patrons that the premises would be temporarily closed, and that they must leave. S. Conrad did not comply and the topless Go–Go dancers continued to dance. Agent Naginey then began to properly identify herself to the patrons and advised them to leave. S. Conrad continued to interfere with Agent Naginey while she made contact with the patrons. Agent Naginey had to also inform the remaining dancers to stop and return to the dressing room. * * * " Statement of Facts, at 2–3.

Therefore, there was reliable, probative, and substantial evidence before the commission to support the commission's finding that appellee had violated R.C. 4301.66 by hindering or obstructing agents or employees of the liquor control

department. Similarly, the stipulated reports and live testimony of the agents before the commission supported the charges that appellee had violated Regulation 52 by allowing a female to dance with completely bare breasts, and others to dance with their breasts covered only with transparent latex "pasties" on the nipple area. Indeed, before this court, appellee has conceded as much and chosen instead to attack the constitutionality of Regulation 52 itself, which, as we have previously stated, this court has previously found to be constitutional.

In summary, we find that the trial court abused its discretion in holding that the order of the commission was not supported by reliable, probative, and substantial evidence. Therefore, appellant's second and third assignments of error are sustained.

In accordance with the foregoing, appellant's first, second, and third assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is reversed.

*Judgment reversed.*

LAZARUS, J., concurs.

PEGGY BRYANT, J., dissents.

PEGGY BRYANT, Judge, dissenting.

Being unable to agree with the majority opinion, I respectfully dissent.

I fully agree with the majority that the decision of appellant, Ohio Liquor Control Commission, finding that appellee, Planet Earth Entertainment, Inc., d.b.a. Diamonds, violated Ohio Adm.Code 4301:1–1–52 is supported by substantial, reliable, and probative evidence. Moreover, I, too, adhere to this court's prior holding that Ohio Adm.Code 4301:1–1–52 reasonably and constitutionally can be interpreted to prohibit the type of nude or semi-nude dancing which constituted two of the three violations in this case. See *WFO DBA Bristols v. Ohio Liquor Control Comm.* (Oct. 31, 1996), Franklin App. No. 96APE05–558, unreported, 1996 WL 631206, jurisdictional motion overruled (1997), 78 Ohio St.3d 1425, 676 N.E.2d 531.

Those observations, however, do not adequately address or dispose of the real issue presented in this case. The charged violations against appellee were not seriously disputed. To the contrary, the parties at the hearing on the violations stipulated the inspector's report which, if believed, supported each of the violations charged. Indeed, Planet Earth appears not to have offered any testimony at the hearing, apart from providing witnesses to answer questions the commissioners posed regarding the "hindering" charge. In that regard, although Planet Earth attempted to argue that it was "uncooperative" only in response to the

requests of the liquor control agents, questions posed by the commissioners suggested that they believed the investigator's report indicating that the action of Planet Earth's management went beyond "uncooperative" to actually hindering the agents' investigation.

Given the foregoing, the real issue before the commission was the sanction to be imposed for those violations, the first Planet Earth incurred. Indeed, even Planet Earth's contentions that it was simply "uncooperative," and not a hinderance, apparently were offered in mitigation of the penalty, as opposed to outright absolution of the charges. In the midst of the discussion concerning appellee's response to the agents, Representative Robert L. Corbin "testified" as follows:

"Representative Robert L. Corbin. I'm the state representative from this area and I'm here today because I'm pleased you are finally hearing this case because the citizens of, from Montgomery County and Washington Township have been frustrated this place has been allowed to operate in what we consider to be an illegal manner in comparison to the liquor law.

"There have been other violations and other complaints as far as their dealings with the landlords, misrepresentation of what they were going to do and stuff like that. I understand there have been court cases found and the frustration of the citizens of Montgomery County and Washington Township and Sheriff's office and township trustees they feel this place should be closed[.]"

The representative's remarks were improperly allowed in the hearing before the Liquor Control Commission. While those remarks benefit a political campaign or a town meeting, for several reasons they have no place in a quasi-judicial proceeding such as a hearing before an administrative agency.

Initially, nothing in the record suggests that the representative spoke from personal knowledge. Indeed, he presented no direct evidence relevant to the commission's proceedings. Instead, the representative appears to have presented himself at the hearing in his capacity as an elected official to argue the position presumably held by his constituents. While a representative surely is an appropriate witness at an administrative hearing if he or she possesses evidence relevant to the proceedings, the representative's remarks here were simply opinion unsupported by personal observation.

The impropriety of the representative's "testimony" is only highlighted by the manner in which it apparently was given. Although the record could be clearer in that respect, counsel for Planet Earth has represented, without dispute from counsel for the Liquor Control Commission, that Representative Corbin appeared with cameras in tow, prepared to have his remarks before the commission filmed. The record affirms counsel's representation. Even though the transcript of the proceedings before the commission does not reflect the presence of television

cameras, the record contains a videotape of the representative's remarks as they appeared on a television news program; the videotape does not include the entire proceeding before the Liquor Control Commission. The record thus suggests that the representative used the quasi-judicial proceedings as an avenue to promote himself before his constituents.

Finally, I cannot ignore the fact that the legislature is responsible for funding the state commissions, including appellant. I do not suggest that any of the commissioners here considered whether financial repercussions might follow from a decision adverse to the representative's remarks. Nonetheless, allowing such "testimony" in judicial proceedings opens the door to an appearance of impropriety and impugns the credibility and integrity of administrative hearings.

While the majority finds no prejudice in the representative's statements, I cannot agree. The primary issue before the commission was the sanction to be imposed. Here, the commission chose to impose the most severe sanction available, even though these violations represented the first incurred by Planet Earth. Although the commission in the past on occasion has revoked a permit on a first violation, I cannot separate the representative's statements from the penalty imposed in these circumstances, absent a commission policy which universally revokes liquor permits on a first violation.

Given the factors noted above, I am compelled to agree with the common pleas court that the representative's statement so tainted the proceedings as to deprive Planet Earth of a fair proceeding before the commission. Political campaign rhetoric and "politicking" is inherently incongruous with the function of a quasi-judicial body. Accordingly, I would affirm the judgment of the trial court.