**PLANET EARTH ENTERTAINMENT, INC., d/b/a Diamonds Plaintiff,**

v.

**Wallace E. EDWARDS, in his official capacity as Chairman, Liquor Control Commission of the State of Ohio, et al., Defendants.**

No. C–3–99–284.

United States District Court,
S.D. Ohio,
Western Division.

July 16, 1999.

Laurence Edward Sturtz, Carlile, Patchen & Murphy, Columbus, OH, Henry Louis Sirkin, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, Chris O Paparodis, Hilliard, OH, for Planet Earth Entertainment Inc dba Diamonds, plaintiff.

David A Raber, Ohio Attorney General, Business & Government Regulation Section, Columbus, OH, for Ohio Liquor Control Commission, Betty D Montgomery, Attorney General, State of Ohio, defendant.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (DOC. # 11); DEFENDANT LIQUOR CONTROL COMMISSION'S MOTION TO DISMISS (DOC. # 6) OVERRULED IN PART AND NOT RULED UPON IN PART; PLAINTIFF DIRECTED TO FILE MEMORANDUM RESPONDING TO REMAINING ARGUMENTS CONTAINED IN DEFENDANT LIQUOR CONTROL COMMISSION'S MOTION TO DISMISS; BRIEFING SCHEDULE SET; HEARING ON MOTION FOR PRELIMINARY INJUNCTION TO BE SET SHOULD CASE SURVIVE MOTION TO DISMISS

RICE, Chief Judge.

This litigation stems from the Plaintiff's attempt to prevent the Ohio Liquor Control Commission ("LCC") from enforcing an order revoking its license to sell alcoholic beverages. Pending before the Court are two motions: (1) the Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 11); and (2) the LCC's Motion to Dismiss the Plaintiff's Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, or, in the alternative, to Overrule the Plaintiff's Motion for a Temporary Restraining Order.[1] (Doc. # 6). For the reasons set forth more fully below, the Court overrules the Plaintiff's Motion, insofar as it seeks a temporary restraining order. After considering the appropriate factors, the Court concludes that the Plaintiff has failed to satisfy the requirements for a temporary restraining order, directing the LCC to reinstate its now-revoked liquor license. The Court also overrules the LCC's Motion to Dismiss, in part, and reserves ruling upon said Motion, in part.

1. The Motion to Dismiss (Doc. # 6) was filed on June 28, 1999, by the original Defendant in this action, the LCC. After the Commission filed its Motion, the Plaintiff filed an amended Complaint, naming as Defendants the Ohio Attorney General, in her official capacity, and LCC Chairman Wallace E. Edwards, in his official capacity. Prior to the filing of the Plaintiff's most recent Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 11), the Plaintiff had filed an earlier Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 3), which was directed toward its original Complaint (Doc. # 1). Given that the Plaintiff now has filed a new Motion for a temporary Restraining Order and Preliminary Injunc-

I. *Analysis*[2]

The Plaintiff, Planet Earth Entertainment, Inc., d/b/a Diamonds ("Diamonds"), filed a "Verified Complaint for Injunctive Relief" on June 21, 1999, alleging that Ohio's statutory scheme for liquor license revocations, and for administrative appeals from such revocations, violates substantive and procedural due process. (Doc. # 1). Diamonds' Complaint asserted a cause of action under 42 U.S.C. § 1983, for alleged violations of its due process rights under the Fifth and Fourteenth Amendments. In response, the LCC filed a Motion to Dismiss (Doc. # 6) on June 28, 1999, alleging: (1) that Diamonds' various claims are barred by res judicata; (2) that Diamonds' claims are barred by the "Rooker–Feldman" doctrine; (3) that the LCC is not subject to suit under § 1983; and (4) that individual members of the LCC are immune from liability for money damages under § 1983.

Thereafter, Diamonds filed an amended Complaint (Doc. # 10), seeking injunctive relief and a declaratory judgment. The amended Complaint names as Defendants LCC Chairman Wallace E. Edwards (as opposed to the LCC as an entity), in his official capacity, and Ohio Attorney General Betty Montgomery, in her official capacity. The amended Complaint contains three counts. Count I, which asserts a 42 U.S.C. § 1983 claim against LCC Chairman Edwards in his official capacity, seeks prospective injunctive relief. Counts II and III, which are directed toward the Ohio Attorney General in her official capacity, seek a declaratory judgment that Ohio Revised Code § 119.12 is unconstitutional.

Attached to Diamonds' amended complaint is a new Motion for a Temporary Restraining Order and Preliminary Injunction, and a Memorandum in Support (Doc. # 11). This new Motion is directed *only* toward Count I of Diamonds' amended Complaint, which contains the § 1983 claim against the LCC Chairman. (Plaintiff's Memorandum in Support at 3). As a means of analysis, the Court first will address Diamonds' request for a temporary restraining order.

A. *Plaintiff's Motion for a Temporary Restraining Order (Doc. # 11)*

A District Court considers four factors when deciding whether to grant a temporary restraining order. Those factors are: (1) the likelihood that the party seeking relief will succeed on the merits of the claim; (2) whether the party seeking relief will suffer irreparable harm without the temporary restraining order; (3) the probability that granting the requested relief will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the temporary restraining order. *Cf. Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994) (setting forth the four factors in the context of a preliminary injunction). These four considerations are factors to be balanced, rather than prerequisites that must be met. *Id.* With these standards in mind, the Court turns now to its analysis of the Plaintiff's request for a temporary restraining order.

As noted, *supra*, only Count I of Diamonds' amended Complaint, which alleges a violation of 42 U.S.C. § 1983, relates to its request for a temporary restraining order. The crux of Diamonds' § 1983 claim against the LCC Chairman is twofold. *First*, Diamonds alleges that the Commission conducted a sham investigation and entered three revocation orders (two based upon violations of a now-defunct administrative regulation (Regulation 52), and one based upon a "cooked up" violation of Ohio Rev.Code § 4301.66 for

tion, which is directed toward its amended Complaint (Doc. #10), the Court deems the former Motion (Doc. #3) to be moot.

**2.** For purposes of the present ruling, the Court will assume familiarity with the facts underlying this litigation. Those facts are recited in the Plaintiff's amended Complaint, and they also are set forth in a recent ruling now has filed a new Motion for a Temporary

Restraining Order and Preliminary Injunction, which is directed toward its amended Complaint (Doc. # 10), the Court deems the former Motion (Doc. # 3) to be moot.by the Ohio Tenth District Court of Appeals in related litigation captioned *Planet Earth Entertainment, Inc. v. Ohio Liquor Control Commission*, 125 Ohio App.3d 619, 709 N.E.2d 220 (1998).

hindering LCC investigators), as part of an unlawful scheme to shut down Diamonds' business, which features semi-nude dancing. *Second,* Diamonds contends that Ohio's "statutory scheme" (i.e., Ohio Revised Code Chapter 119) provides no mechanism for it to challenge the severity of the revocation sanction imposed by the LCC.

 Based upon a review of pertinent case law, the Court concludes that Diamonds has not demonstrated a substantial likelihood of success on the merits of its § 1983 claim. In reaching this conclusion, the Court notes that the first prong of Diamonds' § 1983 claim appears to be precluded by the doctrine of res judicata.[3] In essence, Diamonds suggests that LCC agents conducted an investigation, enforced an unconstitutional ordinance (Regulation 52), "cooked up" a hindering charge, and entered revocation orders in an unlawful attempt to interfere with the exotic dancing conducted at its business.

One apparent problem with Diamonds' argument, however, is that the Regulation at issue was declared unconstitutional by the Ohio Eighth District Court of Appeals well *after* the LCC's investigation, citations, and revocation orders. At the time of the LCC's actions, the Regulation had not been declared unconstitutional. More importantly, for res judicata purposes, the Tenth District Court of Appeals issued a ruling on Feb. 8, 1998, finding "considerable evidence before the commission upon which it could base its determination that [Regulation 52] violations had in fact occurred and revocation of the permit was appropriate." *Planet Earth v. Ohio Liquor Control Com'n,* 125 Ohio App.3d 619, 709 N.E.2d 220, 224 (Ohio App.10th Dist. 1998). Furthermore, with respect to the Ohio Revised Code § 4301.66 "hindering" charge against the Plaintiff, a charge which plays a central role in the present litigation, the Tenth District found reliable, substantial, and probative evidence supporting the following factual findings made by the Commission:

At approximately 10:45 P.M., Agent Naginey entered the premises and properly identified herself to an unknown doorman who attempted to prevent Agent Naginey from entering by saying that Agent Naginey had to 'wait by the door' until he contacted his supervisor. Agent Naginey entered anyway and conferred with Agent Clapp. (It should be noted that the majority of the employees at Diamonds are equipped with portable radios to communicate with other employees.).

Both Agent Naginey and Clapp properly identified themselves to Lucas Liakus *** who stated he was the 'President' of the corporation and Scott Conrad *** who identified himself as 'Vice–President' [sic], and advised them of the violation. Immediately both Liakus and Conrad became uncooperative. Agent Clapp requested L. Liakus to obtain the liquor permit and ordered him to have the dancers stop dancing topless. L. Liakus stated that he would and was then requested by Agent Clapp to have the dancers report to the office to obtain their information. After approximately 15 minutes, no dancers had reported to the office, and L. Liakus and S. Conrad continued to be uncooperative with both Agents. Agent Clapp asked again where the dancers were, and when Agent Naginey went to the bar/dancing area of the premises, she observed the Go–Go dancers still dancing topless, exposing their bare breasts.

Agent Naginey advised Agent Clapp of the dancers and Agent Clapp advised L. Liakus that due to his refusing to cooperate, that the premises would be temporarily closed while the investigation was underway. Agent Naginey proceeded to the bar area and advised S. Conrad that he needed to tell the D.J. to inform the patrons that the premises would be temporarily closed, and that they must leave. S. Conrad did not comply and the topless Go–Go dancers continued to dance. Agent Naginey then began to properly identify herself to the patrons and advised them to

---

**3.** The LCC previously raised the res judicata issue in its Motion to Dismiss (Doc. # 6). In its renewed Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. # 11), however, the Plaintiff fails to address the res judicata issue at all.

leave. S. Conrad continued to interfere with Agent Naginey while she made contact with the patrons. Agent Naginey had to also inform the remaining dancers to stop and return to the dressing room.

*Planet Earth,* 709 N.E.2d at 225.

The foregoing factual findings made by the Commission have collateral estoppel effect. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Additionally, the Tenth District's determination that Diamonds received a full and fair hearing before the Commission, "comporting with constitutional guarantees of due process," is now res judicata. Thus, given that the LCC acted to enforce then-valid legislation, that its afforded Diamonds a hearing comporting with due process, and that the revocation orders were supported by sufficient evidence in the record, the Court questions whether the LCC violated the Plaintiff's due process rights, or how it could be liable under § 1983, based upon its enforcement-related actions. In short, the actions taken by the LCC all appear to have been litigated in state court, with an outcome adverse to Diamonds' present position.

█ The second prong of Diamonds' § 1983 claim appears to be equally unavailing. In the second part of its argument, Diamonds challenges Ohio's allegedly unconstitutional "statutory scheme." In particular, Diamonds argues that it has shown a strong likelihood of success on the merits, because Ohio Revised Code § 119.12, and Ohio's judicial system, prohibit any challenge to the penalty previously imposed by the LCC for its "hindering" violation. Diamonds insists that such a challenge must be permitted, because the "hindering" violation occurred during an LCC investigation that led to citations under the now-invalid Regulation 52. Given that two of Diamonds' three violations have been effectively overturned, it argues that a revocation sanction for the sole remaining violation is draconian. In light of its inability to challenge the sanction, however, Diamonds argues that Ohio's statutory system (i.e., § 119.12) deprives it of due process. This argument raises four issues that Diamonds has failed to address.

*First,* as noted above, the Tenth District Court of Appeals found all three violations supported by the administrative record. The Ohio Supreme Court then certified a conflict among the state's appellate courts, regarding the constitutionality of Regulation 52. Thereafter, Regulation 52 was rewritten, and the Ohio Supreme Court dismissed the Plaintiff's appeal as moot. The Tenth District then remanded the cause to the Franklin County Common Pleas Court for execution of the judgment against the Plaintiff's liquor license. In response, the Common Pleas Court remanded the case to the LCC, so that the Commission could "rethink" its "hindering" penalty, in light of the two vacated Regulation 52 violations. Although the LCC questioned its jurisdiction to "rethink" its penalty, it addressed the issue and decided *not* to alter the sanctions that it previously had imposed. (*See* LCC's Motion to Dismiss, Doc. # 6, at Exh. C) ("The Commission deems it, at best, questionable as to whether it has jurisdiction to reconsider or change the sanction it previously imposed, and which was the subject of an appeal which has now become dispositive. Even if such jurisdiction did exist, the Commission is not inclined to alter the sanction lawfully imposed, and therefore declines to do so.").[4] Thus, contrary to Diamonds' assertion, it has obtained at

---

4. The Plaintiff appealed this administrative ruling to the Franklin County Common Pleas Court, which granted a temporary stay of revocation. The LCC then sought a writ of prohibition from the Tenth District Court of Appeals regarding the stay. The Tenth District issued a show cause order, directed to-ward the trial court judge, as to why the writ should not issue. (Motion to Dismiss, Doc. # 6, at Exh. E). In response, trial court entered an order, nunc pro tunc, setting aside the stay. (*Id.* at Exh. F). Diamonds then initiated the present action in this Court.

least *some* review of the sanction for the hindering violation alone. (*Cf.* Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction at 10 (alleging that "[d]uring this entire process, Diamonds has been denied any opportunity to have the Commission reconsider the 'death penalty' sanction of revocation of its license for three violations, two of which involved clearly protected expression . . .")).

*Second,* Diamonds has failed to demonstrate a substantial likelihood of success on the merits of its claim, based upon the alleged unconstitutionality of § 119.12.[5] The U.S. Supreme Court has recognized that "[t]he extent to which legislatures may commit to an administrative body the unreviewable authority to make determinations implicating fundamental rights is a difficult question of constitutional law." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 450, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). With respect to Ohio Rev. Code § 119.12, Ohio courts have interpreted the statute as permitting *some* judicial review of the sanctions imposed by the Liquor Control Commission. Specifically, LCC sanctions may be reviewed by a common pleas court to ensure that they fall within the range authorized by law. *See, e.g., Henry's Cafe, Inc. v. Board of Liquor Control,* 170 Ohio St. 233, 163 N.E.2d 678 (1959). Beyond that limited review, however, sanctions imposed by the LCC are not subject to any judicial scrutiny. In other words, Ohio courts will not review the severity of a sanction, if that sanction is authorized by law. Diamonds cites no authority, however, establishing that due process requires anything more.

Indeed, even in the context of criminal law, which requires as much or more due process, the Supreme Court has recognized the "general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *see also id.* at 441, 94 S.Ct. 3042, quoting *Gurera v. United States,* 40 F.2d 338, 340–41 (8th Cir.1930) (" 'If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute.' "); *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) ("The Government is also on solid ground in asserting that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review."); *United States v. Daniels,* 446 F.2d 967, 970 (6th Cir.1971) ("In general, we have permitted the trial judge broad discretion in sentencing a criminal defendant without specific regard to the severity of the sentence imposed so long as the sentence was within the permissible statutory range."). The Tenth Circuit may have foreshadowed the extent of Diamonds' due process rights in *Vasquez v. Cooper,* 862 F.2d 250 (10th Cir.1988), reasoning:

The legislature defines the limit of the state's penological interest when it establishes maximum sentences. Although incarceration beyond that time may implicate constitutional concerns, the period of incarceration within that time is necessarily discretionary with the sentencing judge. Vasquez has no right to a particular sentence within the

**5.** Although the Sixth Circuit has not addressed the precise issue raised by the Plaintiff, it has found that § 119.12 generally comports with the requirements of due process. *See Haddix v. Simon,* 791 F.2d 933, 1986 WL 16826 (6th Cir.1986) ("We note also that the State of Ohio has provided meaningful pre-deprivation and post-deprivation remedies for one adversely affected by decisions of the State of Ohio Liquor Control Commission [*e.g.,* Ohio Rev.Code Chapter 119]. Under these circumstances, plaintiff would not be able to pursue a 'deprivation of federal due process rights' claim by any construction given the instant complaint."); *Comsia v. Mangnone,* 815 F.2d 76, 1987 WL 35877 (6th Cir. 1987) ("The state of Ohio provides an adequate post-deprivation proceeding for the plaintiff to pursue which satisfies the requirements of procedural due process[:] Ohio Revised Code § 119.12.").

statutory limits. *The due process analysis in this case, therefore, turns upon whether the process of imposing the sentence was fundamentally fair.* *Id.* at 255. In the present case, the Ohio Tenth District Court of Appeals has determined that the administrative process in Diamonds' case *was* fundamentally fair, and that it fully comported with the requirements of due process. That determination is res judicata.

██ Although the foregoing cases involved judicial review of criminal convictions, due process does not demand any greater degree of judicial review of civil, administrative proceedings. To the contrary, "[d]ue process recognizes that at each stage of a process of review different degrees of finality, deference or discretion may be accorded to different elements of an administrative or judicial decision under review. For example, findings of fact, questions of admissibility of evidence, order of proof, scheduling and punishment, as well as questions of law, historically have received on review different degrees or standards of deference in the legal process." *Rice v. National Transportation Safety Bd.,* 745 F.2d 1037, 1039 (6th Cir. 1984).[6] In the present case, Ohio Revised Code Chapter 119 permitted Diamonds to obtain judicial review concerning the merits of the allegations made against it. The Tenth District ultimately resolved this issue against Diamonds. The appellate court also reviewed the sanctions imposed, ensuring that they fell within the range authorized by law. Thereafter, the Franklin County Common Pleas Court remanded the sanctions issue back to the LCC, which reaffirmed its revocation order, even though it questioned its authority to reconsider the penalty. Given these facts, and Diamonds' failure to cite any supporting case law, the Court questions whether § 119.12 is unconstitutional merely because it disallows challenges to the severity of administrative penalties that fall within an authorized range.[7]

██ *Third,* regardless of the merits of Diamonds' constitutional challenge, res judicata appears to preclude an attack on the constitutionality of § 119.12 in this case. The doctrine of res judicata consists of two related concepts: issue preclusion and claim preclusion.[8] The present case implicates claim preclusion, which provides that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit." *Grava v. Parkman Township,* 73 Ohio St.3d 379, 653 N.E.2d 226, 227–228 (1995) (Emphasis added). Claim preclusion compels a plaintiff "to present every ground for relief in the first action, or be forever barred from asserting it." *Id.*

The Sixth Circuit has identified four elements necessary to establish claim preclusion under Ohio law: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of*

---

**6.** In certain instances, the federal courts have even found that due process does not require *any* judicial review of administrative proceedings. *See, e.g., Ortwein v. Schwab,* 410 U.S. 656, 659–660, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *Saharoff v. Stone,* 638 F.2d 90, 92 (9th Cir.1980) (citing cases).

**7.** Parentheticality, the Court notes the Ohio judiciary's recognition that "[t]he right of appeal is not an inherent right but is one conferred by statute. [citation omitted] The legislature may condition the exercise of this right as it sees fit." *Townsend v. Board of Building Appeals,* 49 Ohio App.2d 402, 361 N.E.2d 271,

272 (1976). Thus, absent a violation of due process, which does not appear to exist in the present case, Diamonds cannot be heard to complain about the limited extent of judicial review available to it.

**8.** Federal courts must give the same preclusive effect to a state court judgment that would be given by courts in the state where the judgment was rendered. *Hospital Underwriting Group, Inc. v. Summit Health, Ltd.,* 63 F.3d 486, 494 (6th Cir.1995). Consequently, the Court must turn to Ohio law to determine whether Diamonds' present arguments are precluded by its prior state-court litigation.

*Warren,* 127 F.3d 490, 493 (6th Cir.1997), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998).

With the foregoing standard in mind, the Court notes that Diamonds' § 1983 claim appears to be barred by res judicata. The Tenth District's prior ruling constitutes a prior decision on the merits. The present action involves the same parties or their privies (Diamonds and the LCC in the first action; Diamonds and the LCC Chairman, in his official capacity, in the present action). The present claim also arises out of the same transaction or occurrence that was the subject of the previous state court action. The only arguable issue is whether Diamonds could have raised its present claim in the prior action. As noted above, the § 1983 claim appears to be based upon: (1) the investigation, prosecution, and revocation actions taken by the LCC, allegedly with ulterior motives; and (2) the constitutionality of § 119.12. For the reasons set forth above, however, the prior Tenth District ruling appears to have rendered the first portion of Diamonds' argument res judicata. The state appellate court found reliable, substantial, and probative evidence supporting all three violations, and it found that Diamonds had received an administrative hearing that comported with the requirements of due process.

With respect to Diamonds' second argument, case law from Ohio appellate courts suggests that it could have challenged the constitutionality of § 119.12 in the prior state-court litigation, as a defense to the LCC's enforcement action. *See Bouquett v. State Medical Bd.,* 123 Ohio App.3d 466, 704 N.E.2d 583 (Ohio App.10th Dist.1997) ("Appellant did not question the constitutionality of R.C. § 119.12 ... in either his hearing before the board or in his appeal to the common pleas court. Generally, '[c]onstitutional issues, not raised during administrative proceedings, are not waived, because the constitutional issues cannot be determined administratively.' ... Nonetheless, constitutional issues which are not raised in either administrative proceedings or to the common pleas

court will not be addressed in the court of appeals in the first instance."); *Foe Aerie 0760 Kokosing v. Liquor Control Commission,* 1996 WL 752556 (Ohio App. 5th Dist. Nov. 6, 1996) ("Because constitutional issues are not proper matters for review by administrative agencies, we find the initial appropriate venue to raise the constitutional issues is the trial court."); *Serenity Recovery Homes, Inc. v. Somani,* 126 Ohio App.3d 494, 710 N.E.2d 789, 793 (1998) ("The only question which could have possibly been raised in this case is the issue of the constitutionality of the requirement found in R.C. § 119.12 that a notice of appeal be filed within fifteen days after the administrative agency's order is mailed. However, as that issue was not raised at the trial court level, nor was it raised by appellant for this court's consideration, we cannot address any constitutional issues with respect to R.C. § 119.12."); *see also City of Canton v. Maynard,* 766 F.2d 236, 238 (6th Cir.1985) ("The Supreme Court of Ohio has also clearly indicated that claim preclusion does not only apply to issues that could have been raised by the plaintiff in the prior proceedings but also to issues that could have been raised as defenses to the plaintiff's claim in the earlier case.") (Emphasis added); *Joe Horisk's Salvage Pool Systems of Ohio v. City of Strongsville,* 91 Ohio App.3d 121, 631 N.E.2d 1097 (1993) (recognizing that defenses which could have been raised in a prior action are barred by res judicata); *Johnson's Island, Inc. v. Board of Township Trustees of Danbury Township,* 69 Ohio St.2d 241, 431 N.E.2d 672, 675 (1982) ("Decisions of this court, and of other jurisdictions, have established that the doctrine of res judicata is applicable to defenses which, although not raised, could have been raised in the prior action. Accordingly, if defendant, as the appellant here, previously neglected to assert the defense, he is precluded from raising it subsequently by virtue of the existence of the judgment rendered in the former action."). Given Diamonds' failure, at any time, to argue the constitutionality of § 119.12 in state court, despite its ap-

parent ability to do so, the Court questions the viability of its present due process argument in the context of a 42 U.S.C. § 1983 action against the LCC Chairman. Such a claim appears to be barred by the doctrine of res judicata.

*Fourth,* Diamonds' § 1983 claim also appears to be barred by the so-called "Rooker–Feldman" doctrine. The essence of this doctrine is that federal courts do not have jurisdiction over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional. In order for Rooker–Feldman to apply, the issue before this Court must be "inextricably intertwined" with the prior state court claim. This requirement has been found to be satisfied if the relief requested in the federal action would effectively reverse the state court decision or void its holding. *Landers Seed Co. v. Champaign Nat'l Bank,* 15 F.3d 729, 732 (7th Cir.1994); *Whiteford v. Reed,* 155 F.3d 671, 674 (3rd Cir.1998). In the present case, the Plaintiff's Complaint for injunctive relief certainly would appear to void the Tenth District's holding, which upheld the revocation of Diamonds' license. Additionally, Diamonds' failure to raise its constitutional arguments in the trial court does not prevent the application of Rooker–Feldman. *See Cook v. United States of America,* 145 F.3d 1330, 1998 WL 228048 (6th Cir.1998), citing *Valenti v. Mitchell,* 962 F.2d 288, 296 (3rd Cir.1992) (recognizing that "a party cannot escape Rooker–Feldman by raising a new constitutional theory in federal court unless the party lacks a realistic opportunity to fully and fairly litigate the constitutional claim in the state court proceeding.").

A second element also must be satisfied, however, before Rooker–Feldman will operate to bar Diamonds' § 1983 claim. In particular, Rooker–Feldman applies only when a party asserts a "specific grievance," as opposed to a "general challenge," with respect to the constitutionality of a state law. The Seventh Circuit re-

cently explained this distinction very well in *VanHarken v. City of Chicago,* 103 F.3d 1346 (7th Cir.1997), stating:

The City's Rooker–Feldman argument fails on a second ground as well, though here we must be careful to distinguish between the different kinds of relief sought by the suit. *Centifanti v. Nix,* 865 F.2d 1422, 1429 (3d Cir.1989). Insofar as the plaintiffs merely seek a declaration that the procedures under which the parking charges against them were, or in the case of those members of the class whose cases have not yet been heard will be, adjudicated are constitutionally inadequate, they are not barred by Rooker–Feldman because they are not challenging the judgment in any parking case. *Buckley v. Illinois Judicial Inquiry Board,* 997 F.2d 224, 227 (7th Cir.1993); *see also Nesses v. Shepard,* 68 F.3d 1003, 1005 (7th Cir.1995); *Dubinka v. Judges of Superior Court,* 23 F.3d 218, 222 (9th Cir.1994); *Centifanti v. Nix, supra,* 865 F.2d at 1429. But insofar as they are seeking refunds of the parking fines imposed upon them, they are barred. The *Feldman* decision illustrates the distinction. It allowed the plaintiffs in that case to challenge the constitutionality of the rule under which they had been denied admission to the bar, 460 U.S. 462, 487–88, 103 S.Ct. 1303, 1317–18, while refusing to allow them to challenge the denial itself. If they prevailed on their challenge to the rule, they might or might not be able to get a new hearing on the denial of their applications for admission, and to that extent the Rooker–Feldman doctrine does not prevent a form of collateral attack upon—or, better perhaps, an oblique swipe at—a state court judgment by a suit brought in a federal district court. Our case is the same so far as the declaratory relief sought by the plaintiffs is concerned, and no more is necessary to support jurisdiction.

*Id.* at 1349.

As in *VanHarken,* Diamonds may be able to challenge the constitutionality of

§ 119.12 *generally*, in its pending declaratory judgment action (although the Court notes a potential standing problem, given the fact that Diamonds presently has no liquor permit, and the fact that no revocation action is pending against the nightclub [9]), but its request for injunctive relief, based upon the allegedly unconstitutional operation of § 119.12 *in this specific case*, appears to be barred by Rooker–Feldman. In reaching this conclusion, the Court notes the Tenth Circuit's recent ruling in *Varallo v. Supreme Court of Colorado*, 176 F.3d 490, 1999 WL 140161 (10th Cir.1999), in which the court reasoned:

> Mr. Varallo argues Rooker–Feldman does not apply because he challenges the constitutionality of the disciplinary process that led to his disbarment, rather than the disbarment itself. *See Feldman*, 460 U.S. at 486, [103 S.Ct. 1303] (holding that district court may entertain general challenges to state bar rules). However, it is clear from Mr. Varallo's complaint that it is his disbarment that is the source of the injuries for which he now seeks relief. The district court could not review his § 1983 claims and grant relief without effectively reviewing and reversing the decision of the Colorado Supreme Court. Indeed, the injunctive relief sought in Mr. Varallo's complaint is an order immediately enjoining the Colorado Supreme

Court's order of disbarment against him. Although Mr. Varallo's complaint also seeks declaratory relief, as in *Facio*, unless Mr. Varallo's state court disbarment is reversed, his interest in the constitutionality of the state's lawyer disciplinary process is "prospective and hypothetical in nature," and he lacks standing to assert his constitutional claims. *Facio*, 929 F.2d at 543; *see also Levin v. Attorney Registration & Disciplinary Comm'n of the Supreme Court of Ill.*, 74 F.3d 763, 767 (7th Cir.1996) (explaining that if plaintiff's disbarment stands, he would lack the personal stake needed for an independent constitutional attack of the state's disciplinary rules regarding disbarment). Accordingly, we agree with the district court that Mr. Varallo's claims that defendants violated his constitutional rights are inextricably intertwined with his state court judgment, and he cannot, therefore, maintain his § 1983 action.

For the foregoing reasons, Diamonds' § 1983 claim against the LCC Chairman appears to be precluded by the Rooker–Feldman doctrine.

In light of the analysis set forth above, the Court concludes that Diamonds has failed to demonstrate a substantial likelihood of success on the merits of its § 1983 claim against the LCC Chairman.[10]

---

**9.** Absent a live case or controversy, Diamonds' interest in the general constitutionality of Ohio Rev.Code § 119.12 would appear to be hypothetical, and a ruling by the Court would be in the nature of an advisory opinion.

**10.** Although Diamonds does not cite the case, in *Depugh v. Ohio Dept. of Commerce, Division of Real Estate*, 128 Ohio App.3d 528, 715 N.E.2d 622(1998), one judge did express his belief that § 119.12 violates due process. Concurring in part and dissenting in part, Judge Harsha stated:

> I concur in the judgment and opinion except for the affirmance of the penalty imposed by the agency. A one-month suspension is patently unreasonable and totally disproportionate to the appellant's conduct. I am aware that reviewing courts are not permitted to modify an administrative sanction as an abuse of discretion where the

underlying order is based upon reliable, probative and substantial evidence and was otherwise in accordance with law. *See Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d 678 (1959) and R.C. § 119.12. However, to insulate from judicial review the imposition of a sanction that is totally disproportionate to the licensee's misconduct from judicial review amounts to a denial of due process. Thus, I do not reject the agency's penalty as an abuse of discretion, but rather, as an error of constitutional law. Accordingly, it should be reversed. *Id.* at 534, 715 N.E.2d at 626. The majority opinion did not address the constitutionality of § 119.12, insofar as it limits judicial review of the administrative sanction imposed, and perhaps surprisingly, no other Ohio court appears to have addressed that particular aspect of the statute, either.

Therefore, the first factor in the Court's four-part analysis militates strongly in favor of the Defendants.

With respect to the second factor, the Court finds the potential for some irreparable injury to Diamonds. Although the Court cannot agree with Diamonds' assertion that the LCC's actions have deprived it of its constitutionally protected right to engage in exotic dancing, the Court does agree that irreparable injury may flow from the loss of its liquor license. Indeed, the Eleventh Amendment appears to preclude any suit for money damages against the LCC if Diamonds prevails in its present lawsuit. Consequently, the second TRO factor favors Diamonds.

■ Regarding the third factor, substantial harm to others, the Court notes that the issuance of a temporary restraining order would substantially interfere with the Liquor Control Commission's ability to enforce state law. In short, the issuance of an injunction in the present case would, at least temporarily, undo the effect of extensive state-court litigation upholding the LCC's right to revoke Diamonds' liquor license. Particularly when considered in the context of Diamonds' failure to demonstrate a substantial likelihood of success on the merits, this factor weighs in favor of the LCC. Furthermore, after weighing the harm to the Plaintiff if the TRO is denied, and the harm to the LCC if the TRO is granted, the Court concludes that this weighing of competing interests favors the LCC.

■ Finally, with respect to the fourth TRO factor, the Court finds unpersuasive Diamonds' argument that the issuance of a temporary restraining order, directing the LCC to reinstate the Plaintiff's now-revoked liquor license, would serve the public interest. In support of its argument, Diamonds contends that the LCC enacted an unconstitutional Regulation, namely Regulation 52, and then "provoked" a response from Diamonds' employees while enforcing this invalid Regulation. As the Court has explained in its foregoing analysis, however, the Ohio Eighth District Court of Appeals declared Regulation 52 unconstitutional well *after* the enforcement and revocation actions taken by the LCC. The Court also notes that, upon review of the LCC's actions in the present case, the Tenth District Court of Appeals *upheld* the constitutionality of Regulation 52. In so doing, the Tenth District noted the existence of legal precedent *rejecting* challenges to the Regulation's constitutionality. *See Planet Earth Entertainment, Inc. v. Ohio Liquor Control Commission,* 125 Ohio App.3d 619, 709 N.E.2d 220, 222 (1998). Consequently, the Court finds no evidence to support Diamonds' suggestion that the LCC deviously enforced an unconstitutional Regulation as a ruse to interfere with its exotic dancing. The Court also finds no evidence to support Diamonds' claim that LCC investigators "provoked" the Ohio Revised Code § 4301.66 "hindering" violation which led to its license revocation. As set forth above, the Tenth District Court of Appeals noted the existence of reliable, probative, and substantial evidence before the Commission to support a finding that Diamonds' employees had hindered or obstructed LCC agents. *Id.* at 224–225. Those factual findings, which have collateral estoppel effect, do not suggest any provocation by LCC. Consequently, the Court cannot agree that the issuance of a temporary restraining order would serve the public interest in the present case. Therefore, the final factor in the Court's four-part analysis militates in favor of the LCC.

On the whole, after balancing the aforementioned factors, the Court concludes that Diamonds has not demonstrated its entitlement to a temporary restraining order. Accordingly, Diamonds' Motion for a Temporary Restraining Order is overruled.

### B. *Motion to Dismiss (Doc. # 6)*

Having overruled Diamonds' Motion for a Temporary Restraining Order, the Court turns now to the pending Motion to Dismiss under Fed.R.Civ.P. 12(b)(6). In its Motion, the LCC raises four arguments: (1) that Diamonds' Complaint is barred by

the doctrine of res judicata; (2) that the Complaint is barred by the Rooker–Feldman doctrine; (3) that the LCC is immune from suit under the Eleventh Amendment; and (4) that individual LCC members are immune from liability for money damages.

■ In light of Diamonds' amended Complaint, however, the LCC's argument regarding the Eleventh Amendment fails. As noted, *supra*, the amended Complaint names the LCC Chairman and the Ohio Attorney General as Defendants. It seeks only prospective injunctive relief against the LCC, and a declaratory judgment against the Ohio Attorney General, regarding the constitutionality of Ohio Revised Code § 119.12. Given that Diamonds' § 1983 claim is directed toward the LCC Chairman, in his official capacity, and that it does not seek money damages, the Eleventh Amendment presents no impediment. *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir.1999). Likewise, Diamonds' amended Complaint renders moot the LCC's argument that individual Commission members enjoy absolute immunity from liability for money damages. Diamonds' amended Complaint contains no request for money damages. Accordingly, the LCC's Motion to Dismiss is overruled, insofar as it raises Eleventh Amendment and absolute immunity arguments.

The LCC also contends, however, that Diamonds' § 1983 claim is barred by the doctrine of res judicata and by the Rooker–Feldman doctrine. In its analysis, *supra*, the Court has set forth its observations regarding the potential applicability of those two doctrines, in the context of ruling on the Plaintiff's Motion for a temporary restraining order. The Court notes, however, that Diamonds has not yet addressed the res judicata or Rooker–

Feldman issues in its combined Memorandum in support of a temporary restraining order and Memorandum in opposition to the LCC's Motion to Dismiss. (Doc. # 11). Instead, Diamonds has declared that the issues raised in the LCC's Motion to Dismiss are "moot," in light of its amended Complaint. For the reasons set forth above, however, the Court is not persuaded that *all* of those issues are moot.

In any event, given Diamonds' failure to address the res judicata and Rooker–Feldman issues, the Court will reserve ruling, at this time, on the LCC's Motion to Dismiss, insofar as the Motion concerns those two issues. Prior to ruling upon those two aspects of the pending Motion to Dismiss, the Court will provide Diamonds with one additional opportunity to file a Memorandum, addressing the applicability of the res judicata and Rooker–Feldman doctrines, with particular attention paid to the concerns expressed herein. The Memorandum shall be filed within *twenty-one* days of the filing of this Decision and Entry. The LCC may then file, within *fourteen* days thereafter, a Reply Memorandum. After reviewing those filings, the Court will rule upon the remaining arguments raised in the pending Motion to Dismiss.[11]

## II. *Conclusion*

Based upon the foregoing analysis, the Plaintiff's Motion for Temporary Restraining Order (Doc. # 11) is overruled. The Liquor Control Commission's Motion to Dismiss (Doc. # 6) is overruled in part, and not ruled upon in part. The Plaintiff is directed to file a Memorandum, within twenty-one days, addressing the Liquor Control Commission's res judicata and Rooker–Feldman arguments. The Liquor

---

**11.** The Court also notes that the Ohio Attorney General has not yet had an opportunity to address the two new claims raised in Diamonds' amended Complaint (Doc. # 10), which now seeks a declaratory judgment concerning the constitutionality of Ohio Revised Code § 119.12. Given the Attorney General's recent addition as a party to this litigation, the pending Motion to Dismiss (Doc. # 6) did not address the newly added declaratory judgment claims. Therefore, if the Attorney General's office wishes to file its own Motion to Dismiss, same must be filed within the aforesaid twenty-one-day period, and the Court will entertain such Motion, in accordance with the briefing schedule set forth in S.D.Ohio Civ.R. 7.2(a).

Control Commission may file a Reply Memorandum within fourteen days thereafter. The Court will set a hearing date for the Plaintiff's Motion for a Preliminary Injunction, if the captioned-cause survives the Liquor Control Commission's Motion to Dismiss (Doc. # 6).