**Jeanette DAVIS, Plaintiff,**

v.

**Betty MONTGOMERY,
et al., Defendants.**

**No. C–3–99–609.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 3, 2000.

Tony Merry, Palmer Volkema & Thomas, Columbus, OH, for Plaintiffs.

Chester Tynes Lyman, Jr., Ohio Attorney General, Business & Government Regulation Section, Columbus, OH, John Edward Patterson, Darrell M. Pierre, Jr., Ohio Attorney General, Chief Counsel's Staff Section, Columbus, OH, Kimberly L. Charles, Assistant Attorney General, Chief Counsel's Staff, Columbus, OH, for Betty Montgomery, Robert Taft.

Chester Tynes Lyman, Jr., Ohio Attorney General, Business & Government Regulation Section, Columbus, OH, John Edward Patterson, Kimberly L. Charles, Assistant Attorney General, Chief Counsel's Staff, Columbus, OH, for State of Ohio, Police and Firemen's Disability and Pension Fund.

Eugene Baldwin Lewis, Richard A. Frye, Sarah Morrison Daggett, Chester Willcox & Saxbe, Columbus, OH, Chester Tynes Lyman, Jr., Ohio Attorney General, Business & Government Regulation Section, Columbus, OH, Kimberly L. Charles, Assistant Attorney General, Chief Counsel's Staff, Columbus, OH, for Allen J. Proctor, David Harker, Kenneth M. Gehring, O'Neal Saunders, Robert M Beck, Thomas Bennett, Martin Erbaugh, Patrick J Patton, Richard T Balazs, James R Winfree, Jim Petro.

DECISION AND ENTRY SUSTAINING THE MOTIONS TO DISMISS OF DEFENDANTS EXECUTIVE DIRECTOR AND THE INDIVIDUALLY–NAMED TRUSTEES OF THE OHIO POLICE AND FIRE PENSION FUND (DOC. # 17) AND OF DEFENDANTS MONTGOMERY AND TAFT (DOC. # 21); THE MOTION OF DEFENDANTS STATE OF OHIO AND BOARD OF TRUSTEES OF THE OHIO POLICE AND FIRE PENSION FUND (DOC. # 6) OVERRULED AS MOOT; PLAINTIFF ORDERED TO SHOW CAUSE, WITHIN FOURTEEN (14) DAYS FROM DATE, WHY FOURTH CLAIM FOR RELIEF (PROCEDURAL DUE PROCESS) SHOULD NOT BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

RICE, Chief Judge.

This litigation stems from the divorce of Jeanette Davis and her former husband, James E. Davis, a municipal firefighter. During the course of their marriage, Mr. Davis was a participant in the Ohio Police and Fire Pension Fund, formerly known as the Ohio Police and Firemen's Disability and Pension Fund ("Pension Fund"). As part of its decree of divorce, the Montgomery County Court of Common Pleas awarded Jeanette Davis one-half of the benefits from the Pension Fund that had accrued to Mr. Davis during their marriage. To effectuate the pension portion of the divorce decree, the court issued an agreed Qualified Domestic Relations Order ("QDRO"), directing the Pension Fund to allocate 50% of the future benefits due to Mr. Davis from the fund to Plaintiff. The Pension Fund, through Ohio Attorney General Betty Montgomery, filed a motion with the Common Pleas Court, seeking the vacation of the QDRO on the ground that the Fund was barred by Ohio Rev.Code § 742.47 from paying benefits to Jeanette Davis. The Pension Fund's motion was overruled, and it timely appealed. On December 4, 1998, the Court of Appeals for the Second District of Ohio reversed the lower court, and remanded the case to the Court of Common Pleas for the entry of an order vacating the QDRO.

Plaintiff Jeanette Davis initiated this litigation on November 16, 1999, seeking to invalidate and enjoin enforcement of Ohio Rev.Code § 742.47 and other Pension Fund policies, on the ground that application of that statute and the policies resulted in deprivations of her constitutional rights. She set forth three claims for relief under the Fifth and Fourteenth Amendments to the United States Constitution, to wit: 1) a claim for taking of her property interest in 50% of James Davis' pension benefit from the Pension Fund without just compensation; 2) a claim for violation of her right to substantive due process; and 3) a claim for violation of her right to equal protection. The original defendants to this action were Betty Montgomery, Attorney General of Ohio; Robert Taft, Governor of Ohio; the State of Ohio; and the Board of Trustees of the Pension Fund.

On February 10, 2000, Plaintiff filed a First Amended Complaint (Doc. # 11), in which she removed the State of Ohio and the Board of Trustees of the Pension Fund as party-defendants to this litigation, and added the Executive Director and individual trustees of the Pension Fund.[1] In addition, she added a fourth claim, namely a claim for violation of her right to procedural due process.

Pending before the Court are three Motions to Dismiss (Doc. # 6, Doc. # 17, and Doc. # 21), constituting motions by each of the current and former Defendants to this lawsuit for dismissal of her three original claims. For the reasons assigned, the Motions of the Executive Director and the individually-named trustees (Doc. # 17), and of Montgomery and Taft (Doc. # 21) are SUSTAINED. The Motion of former Defendants State of Ohio and Board of Trustees (Doc. # 6) is OVERRULED as MOOT.

I. *Motion to Dismiss of the Executive Director and Individually Named Trustees of the Pension Fund (Doc. # 17); Motion to Dismiss of Betty Montgomery and Robert Taft (Doc. # 21)*

Allen J. Proctor, the Executive Director of the Pension Fund, and the eleven individually-named trustees assert four grounds on which Plaintiff's Complaint must be dismissed. *First,* they argue that this Court lacks subject matter jurisdiction to review final determinations of the state courts in judicial proceedings under the *Rooker Feldman* doctrine. *Second,* they assert that, under the doctrine of claim preclusion, Davis is precluded from raising her constitutional claims in a federal proceeding when she has failed to raise those arguments in her previous state court proceeding. *Third,* Defendants Proctor, Erbaugh, Saunders and Winfree contend that

Plaintiff has failed to state claims against them upon which relief may be granted. *Fourth,* the trustees argue that Davis has failed to name the real party in interest, when she named the designated agent for the Ohio Attorney General as a party-defendant.

Defendants Montgomery and Taft also set forth five arguments why the claims against them must be dismissed. *First,* they assert (as do the trustees of the Pension Fund) that this Court lacks subject matter jurisdiction over Plaintiff's claim, pursuant to the *Rooker–Feldman* doctrine. *Second,* they contend that they are entitled to immunity, pursuant to the Eleventh Amendment to the United States Constitution. *Third,* they argue that Ohio Rev. Code § 742.47 (anti-alienation law) does not infringe upon Plaintiff's substantive due process rights. *Fourth,* they assert that the application of the anti-alienation law does not violate Davis' right to equal protection. *Finally,* they argue that there has been no unconstitutional taking in this case. As discussed below, the Court concludes that the *Rooker–Feldman* doctrine requires that Plaintiff's claims be dismissed, for want of subject matter jurisdiction. Because the Court's analysis of the *Rooker–Feldman* doctrine resolves Defendants' motions, the Court will not address their additional arguments in support of their motions to dismiss.

■ The *Rooker–Feldman* doctrine states that a party which has lost in state court "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De-Grandy,* 512 U.S. 997, 1005–6, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75

---

1. These new Defendants are: Allen J. Proctor, Executive Director of the Pension Fund; David Harker; William Gallagher; Kenneth M. Gehring; O'Neal Saunders; Robert M. Beck; Thomas Bennett; Martin Erbaugh; Patrick J. Patton; Richard T. Balazs; James R. Winfree; and Jim Petro.

L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States. *Boure v. Clark County Municipal Ct. of Springfield*, 2000 WL 145382 (6th Cir. Jan.31, 2000). As stated by the Supreme Court,

> [O]ne of the policies underlying the requirement that constitutional claims be raised in state court as a predicate to our certiorari jurisdiction is the desirability of giving the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments. A state court may give the statute a saving construction in response to those arguments.

*Feldman*, 460 U.S. at 482–84 n. 16, 103 S.Ct. 1303.

■ In order for the *Rooker–Feldman* doctrine to apply, two elements must be satisfied: *first*, the issue before this Court must be "inextricably intertwined" with the prior state court claim, and *second*, the action brought in the district court must be a "specific grievance" that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case, rather than a "general challenge" to the constitutionality of the state's law applied in the state action. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir.1998); *Planet Earth Entertainment, Inc. v. Edwards*, 84 F.Supp.2d 891, 900 (S.D.Ohio 1999)(Rice, J.).

■ The first requirement (*i.e.*, that the issue before the Court be "inextricably intertwined" with the claim in the state court proceeding) has been found to be satisfied if the relief requested in the federal action would effectively reverse the state court decision or void its holding. *Planet Earth*, 84 F.Supp.2d at 900, citing *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir.1994) and *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir.1998). The failure of a party to raise a constitutional challenge in state court does not prevent application of the *Rooker–Feldman* doctrine. *Id.* at 900. However, numerous courts have stated that an issue is not inextricably intertwined with the state court claim if the party had no "reasonable opportunity" to present the issue in state court. *E.g., Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983).

In the present case, the trustees contend that Plaintiff cannot satisfy the first element, because she would not have brought this action had she prevailed in the Second District Court of Appeals. They argue that the state court of appeals decided the rights as between the parties in reversing the QDRO, and that Plaintiff's federal claims are "inextricably intertwined" with that court's denial of her rights under the trial court's order. In addition, the trustees argue that Plaintiff could have raised her claim in the state court. They state that the Second District Court of Appeals noted that the Pension Fund had been permitted to intervene (*see Davis v. Davis*, 131 Ohio App.3d 686, 723 N.E.2d 599 (1998)), and that Plaintiff could have and should have raised her constitutional challenges when the Pension Fund challenged the QDRO upon its intervention.

Plaintiff has argued that the state court proceeding was a divorce case, and that the Defendants' refusal to accept the QDRO arose tangentially to that proceeding. She states that she offered no challenge to the constitutionality of the statutory or regulatory scheme during the state action, nor could she. Specifically, she states that with neither the State, the Pension Fund, nor any of the other state actors joined as parties to the state court action, there was no means by which she could have mounted a challenge to the statute's constitutionality. Plaintiff further asserts that she is not challenging the state court's statutory interpretation of § 742.47; rather, she states that she is seeking a declaration that the state's regu-

latory and administrative scheme for the Pension Fund is unconstitutional.

Plaintiff has attempted to analogize the circumstances presented herein with those in *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998). In that case, the plaintiff's former spouse had filed for divorce in the state of Arizona, and obtained a divorce decree with terms unfavorable to the plaintiff. After a variety of failed efforts to appeal and vacate the orders of the Arizona court, the plaintiff filed federal actions in Ohio and Tennessee, seeking, *inter alia*, to have the Arizona divorce decree voided, because it violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and the Full Faith and Credit Clause.[2] In addressing whether the federal district court in Tennessee lacked subject matter jurisdiction, pursuant to the *Rooker–Feldman* doctrine, over the plaintiff's claim that the Arizona state court judgment was entered in violation of due process, the Sixth Circuit analyzed whether the due process claim was inextricably intertwined with the divorce judgment. The court concluded that it was not, reasoning:

> Catz' due process allegation does not implicate the merits of the divorce decree, only the procedures leading up to it.[3] For him to seek federal relief on this score need not be "predicated upon a conviction that the state court was wrong" on the merits. And, as we

pointed out above, relief for Catz' due-process claim would not consist of a conflicting judgment on the merits; if the court were to declare the Pima County decision void as having been secured in violation of due process, this would not itself prevent [plaintiff's former spouse] from resuming or refiling her divorce action, nor prevent the Pima County Court from coming to the same conclusion under constitutional procedures.

142 F.3d at 294.

Unlike *Catz*, in which the plaintiff's claim was based upon improper process by the judicial forum, Plaintiff primarily challenges the constitutionality of a statute, which resulted in the voiding of her QDRO. Although Plaintiff has acknowledged that she did not raise the constitutionality of Ohio Rev.Code § 742.47, the Court sees no reason why Plaintiff could not have raised such an issue during the Pension Fund's challenge of the QDRO. *See, e.g., Semilia v. Semilia*, 1989 WL 114781 (Stark Cty. Sept. 18, 1989)(stating that court would not address constitutional issues regarding child support that were not raised by husband in the trial court, and it would not address constitutional arguments regarding visitation where not necessary to do so). The Pension Fund's challenge in the trial court and the subsequent appeal were specifically directed to

---

**2.** The plaintiff also included claims under 42 U.S.C. § 1983; the Electronic Communications Act, 18 U.S.C. § 2511; and state law.

**3.** Catz alleged a number of procedural errors in the Arizona divorce case. He claimed that he did not receive notice of Chalker's divorce action or of a temporary restraining order (received *ex parte* ) until five weeks after the divorce was filed and two weeks after the TRO was granted. A hearing on Catz's motion to dismiss (in which argued that his Ohio divorce decree must be given full faith and credit and that the TRO would cause him severe financial hardship) was originally scheduled for December 19, 1994, but was continued until an undetermined date in 1995. Catz claimed that following his relocation to Tennessee in early 1995, he sent a change of address form to the Arizona court, but that it refused to receive the form. As a result, he allegedly received notices of deposition and hearing dates only after they occurred. After Catz failed to appear at a February 9, 1995, deposition, Chalker moved for and received sanctions against Catz. The court also held barred him from filing further pleadings and answers, or from introducing evidence. Catz claimed that the sanctions hearing was held without notice to him. Later, without Catz present, the Arizona court refused to give the Ohio divorce decree full faith and credit. Catz submitted a motion to vacate, but it was not filed; the clerk returned it to him after the time to file a notice of appeal had expired. *Catz*, 142 F.3d at 282–83.

the question of whether § 742.47 should be applied to invalidate her QDRO. That question is certainly broad enough to encompass not only questions of statutory construction, but questions about the constitutionality of the statute, in the event the court accepted the interpretation argued by the Pension Fund. This lawsuit merely raises issues that she could have raised in the course of the state court proceedings concerning the division of marital property. Put simply, unlike *Catz*, which dealt with judicial process, Plaintiff's federal claims deal with judicial holdings. Although ostensibly accepting the court of appeal's interpretation of § 742.47, this litigation is a collateral attack on that court's ultimate conclusion that the QDRO must be vacated.

Plaintiff's action more closely resembles that in *Powell v. Powell*, 80 F.3d 464 (11th Cir.1996). In *Powell*, the plaintiff, a retired sailor in the United States Navy, was divorced from his wife after almost thirty-seven years of marriage. As a part of their divorce, a jury awarded the wife $480.00 per month of the plaintiff's navy retirement pay, which constituted forty percent of that pay. Pursuant to a provision in the Former Spouses' Protection Act ("FSPA"), which allowed the application of both community property and equitable distribution principles to military retirement pay, the Secretary of the Navy took that amount out of the plaintiff's retirement pay and paid it directly to his former spouse.

In response to the award of military retirement pay to his former spouse and the distribution of it by the Navy to her, the plaintiff filed an action in federal district court against his former spouse and the Secretary of the Navy. He claimed, *inter alia*, that the FSPA was unconstitutional as applied to him, because it amounted to an unconstitutional taking of his property. He sought to enjoin the Secretary from distributing his naval retirement pay to his former wife, and to have the FSPA declared unconstitutional

as applied to him and to others similarly situated. The plaintiff never raised any issue about the constitutionality of the FSPA in the divorce court, nor did he seek appellate review of the judgment issued by that court.

Although the district court held the FSPA was not unconstitutional as applied to the plaintiff and, alternatively, that his claim was barred under the principles of *res judicata*, the Eleventh Circuit inquired whether the district court lacked subject matter jurisdiction over the claim under the *Rooker–Feldman* doctrine. The court held that the *Rooker–Feldman* doctrine was applicable, stating:

> In this case, the state trial court, in accordance with Georgia principles of equitable division, awarded $480.00 of Mr. Powell's naval retirement pay, or forty percent of it, to Mrs. Powell. The court made that award pursuant to authorization contained in the FSPA. Mr. Powell's present federal claim that the FSPA is unconstitutional as applied to him is "inextricably intertwined" with the issue of whether the state court could award Mrs. Powell part of his naval retirement pay. If a federal district court were now to hold in Mr. Powell's favor on his federal claim, that holding would "effectively nullify" the state court's judgment that Mrs. Powell is to receive a portion of his naval retirement pay. The result would be that the state court's judgment, insofar as it pertains to money to be received by Mrs. Powell, would be collaterally reviewed and reversed in federal court, which is precisely what the *Rooker–Feldman* doctrine exists to prevent.

*Id.* at 467 (citations omitted). The court further rejected the plaintiff's argument that he did not have a "reasonable opportunity" to bring his claim in state court proceeding, because the Secretary of the Navy had not been a party.

Although the plaintiff in *Powell* challenged a distribution of retirement pay, while Plaintiff herein challenges an order

vacating such a distribution, the essence of these two cases is the same. Both Plaintiff and Mr. Powell have attempted to attack in federal district court the constitutionality of a statute that dictates the terms by which retirement funds may be distributed, because the statutes resulted in decisions unfavorable to them. Both failed to raise the constitutionality of the relevant statute in state court when they could have done so.[4] In addition, if the Court were to rule in Plaintiff's favor (on both her challenge to § 742.47 and to the Fund's policies and procedures) and reinstate her QDRO, it would effectively nullify the court of appeal's determination that § 742.47 did not allow the Fund to distribute funds directly to her and that the QDRO must be vacated. Accordingly, as with the plaintiff's claims in *Powell,* Plaintiff's constitutional claims are inextricably intertwined with the state court proceeding. *See also Cook v. United States of America,* 1998 WL 228048 (6th Cir.1998), citing *Valenti v. Mitchell,* 962 F.2d 288, 296 (3d Cir.1992)(recognizing that "a party cannot escape *Rooker–Feldman* by raising a new constitutional theory in federal court unless the party lacks a realistic opportunity to fully and fairly litigate the constitutional claim in the state court proceeding."); *Coregis Ins. Co. v. City of Hamtramck,* 12 F.Supp.2d 650, 654 (E.D.Mich.1998)("federal courts must apply the *Rooker–Feldman* Doctrine and dismiss the claims, even where the inextricably intertwined issues underlying the claims before it were not raised in state court, or where the time for appeal in the state court system has expired."); *Planet Earth,* 84 F.Supp.2d at 900.

As stated above, even if Plaintiff's claim are inextricably intertwined with her state court action, the *Rooker–Feldman* doctrine will not operate unless Plaintiff has asserted a "specific grievance" rather than a "general challenge" with respect to the constitutionality of a state law. The Seventh Circuit recently explained this distinction very well in *VanHarken v. City of Chicago,* 103 F.3d 1346 (7th Cir.1997), stating:

> The City's *Rooker–Feldman* argument fails on a second ground as well, though here we must be careful to distinguish between the different kinds of relief sought by the suit. *Centifanti v. Nix,* 865 F.2d 1422, 1429 (3d Cir.1989). Insofar as the plaintiffs merely seek a declaration that the procedures under which the parking charges against them were, or in the case of those members of the class whose cases have not yet been heard will be, adjudicated are constitutionally inadequate, they are not barred by *Rooker–Feldman* because they are not challenging the judgment in any parking case. *Buckley v. Illinois Judicial Inquiry Board,* 997 F.2d 224, 227 (7th Cir.1993); *see also Nesses v. Shepard,* 68 F.3d 1003, 1005 (7th Cir.1995); *Dubinka v. Judges of Superior Court,* 23 F.3d 218, 222 (9th Cir.1994); *Centifanti v. Nix, supra,* 865 F.2d at 1429. But insofar as they are seeking refunds of the parking fines imposed upon them, they are barred. The *Feldman* decision illustrates the distinction. It allowed the plaintiffs in that case to challenge the constitutionality of the rule under which they had been denied admission to the bar, 460 U.S. 462, 487–88, 103 S.Ct. 1303, 1317–18, 75 L.Ed.2d 206, while refusing to allow them to challenge the denial itself. If they prevailed on their challenge to the rule, they might or might not be able to get a new hearing on the denial of their applications for admission, and to that extent the *Rooker–Feldman* doctrine does not prevent a form of collateral attack upon-or, better perhaps, an oblique swipe at-a state court judgment by a suit brought in a federal district court. Our case is the same so far as the declaratory relief

---

4. Unlike *Powell,* in which the Secretary of the Navy was not a party, the Montgomery County Common Pleas Court allowed the Fund to challenge Plaintiff's QDRO, thus implicitly allowing it to intervene. *See Davis v. Davis,* 131 Ohio App.3d 686, 723 N.E.2d 599 (1998).

sought by the plaintiffs is concerned, and no more is necessary to support jurisdiction.

*Id.* at 1349.

In the present case, Plaintiff has mounted a specific challenge to the application of § 742.47 to her, rather than a general challenge to the state's regulatory and administrative scheme for the Pension Fund.[5] Davis specifically requests asks this Court to declare that § 742.47, as applied, is unconstitutional, and to enjoin enforcement of § 742.47 to the extent that the statute compels Defendants to refuse to recognize Plaintiff's QDRO. She further requests a permanent injunction requiring Defendants to accept Plaintiff's QDRO, in addition to those of other spouses or former spouses, and to allocate to her one-half of the pension benefits accrued by Mr. Davis during their marriage. Thus, Plaintiff's Complaint indicates that she is seeking to alter the outcome of her divorce action, not to make a general challenge to the Fund's policies and procedures and to the statutes by which it operates.

In summary, Plaintiff's claims in the pending action are inextricably intertwined with her prior state law action, and she has made a specific challenge to the statutory scheme and policies which govern the functioning of the Fund. Accordingly, Plaintiff's claims must be dismissed, for lack of subject matter jurisdiction, under the *Rooker–Feldman* doctrine.

II. *Motion to Dismiss of State of Ohio and Board of Trustees of the Police and Firemen's Disability and Pension Fund (Doc. # 6)*

On January 18, 2000, the State of Ohio and the Board of Trustees of the Pension Fund filed a Motion to Dismiss (Doc. # 6). Because these entities are no longer in-

volved in this litigation (*see* Doc. # 11), their Motion to Dismiss (Doc. # 6) is OVERRULED as MOOT.

III. *Plaintiff's Remaining Procedural Due Process Claim*

In her Amended Complaint (Doc. # 11), Plaintiff has added a fourth claim for relief for violation of her right to procedural due process. That claim was not addressed in Defendants' motions to dismiss. Because the procedural due process claim appears to make a similar challenge as her other three claims, Plaintiff is hereby ORDERED to show cause, within fourteen (14) days from date, why her procedural due process claim should not likewise be dismissed for lack of subject matter jurisdiction.

---

**5.** Although Plaintiff may be able to mount such a general challenge, the Court notes a potential standing problem. The statute has already been applied to Plaintiff in her divorce action, and Plaintiff has not indicated whether that action is still pending. Absent a live case or controversy, Plaintiff's interest in the general constitutionality of Ohio Rev.Code § 742.47 would appear to be hypothetical, and a ruling by the Court would be in the nature of an advisory opinion.